STATE v. KENNY BOILER & MANUFACTURING COMPANY.[1]

May 6, 1938.

No. 31,681.

[1]Reported in 279 N. W. 407.

*Alfred R. Sundberg,* for appellant.

*R. S. Wiggin,* City Attorney, and *Leo P. McHale;* Assistant City Attorney, for the State.

JULIUS J. OLSON, JUSTICE.

Defendant appeals from a judgment finding it guilty of violating an ordinance of Minneapolis passed under date of October 25, 1935.

The facts are not in dispute and may be summarized thus: On September 15, 1937, Tunstead Heating Company, a duly licensed heating contractor of Minneapolis, was given permission by the inspector of buildings of that city to make certain repairs to two boilers used in heating a building located at Fourth avenue south and Sixteenth street. Defendant's place of business is at St. Paul. It was not licensed under the mentioned ordinance but nevertheless was engaged by the heating company to make certain alterations and repairs within the scope of the work undertaken by the heating company. On October 8, 1937, Mr. Sperry, a deputy building inspector, whose assigned duty was to inspect steam and hot water plants within the city, visited the premises mentioned and there found certain men at work on the heating plant. They were "in the act of removing the old fronts of two boilers, and replacing them with new fronts and repairs." He ascertained that the men working on the job were employes of defendant, being so informed by the men working there. They had no license or license cards. He further ascertained that defendant was performing this work and that it had not received a license so to do.

Defendant's employment by the heating company was "to fabricate and install new fronts to the steam boiler" at the mentioned location. It is an old and well established business enterprise, dating back to 1869. Its employes "are both practically and technically entitled to do boiler work, and they specialize in boiler repairing." Their work "is separate and apart from steam fitting and their equipment and facilities are greater and more complete than that of a so-called steam fitter." Defendant's work on this job "was being done for the said Tunstead Heating Company, and under their directions and supervision."

With these facts established, defendant moved the court: (1) To make "a finding of not guilty, as there was no violation of the ordinance proved"; (2) that "the ordinance was not intended and does not apply to the business of boiler works"; and (3) that the ordinance "was and is unconstitutional."

As has been said, the court found defendant guilty and assessed a fine of ten dollars. The appeal brings for review the propriety of the conviction.

The assignments of error may be grouped into two parts: (1) Whether the facts mentioned warrant a conviction assuming the ordinance to be constitutionally valid, and (2) if that be answered in the affirmative, is the enactment constitutionally sustainable? If the former inquiry be answered in the negative, no consideration need be given the latter.

Defendant thinks the "principal issue involved in this appeal is whether or not the ordinance in question is unconstitutional and invalid." Its claim in this respect is that the ordinance "is special, or class, legislation."

The title of the ordinance and the first section thereof, the latter being what the prosecution claims to be the basis for the proceedings here brought and as constituting a sufficient basis for the conviction, read:

"An Ordinance

"To license and regulate persons constructing, installing, altering, repairing and/or servicing steam and hot water heating systems and cooling piping and equipment, in buildings or structures, or engaged in the business thereof, in the City of Minneapolis.

"The City Council of the City of Minneapolis do ordain as follows:

"Section 1. No person, firm or corporation shall hereafter construct, install, alter, repair or service any steam or hot water heating system, or any cooling piping and equipment, in any building or structure within the City of Minneapolis, or engage in or carry on the business in said City, of constructing, installing, altering, repairing or servicing steam or hot water heating systems or cooling

piping and equipment, without having first secured a license from the City Council of said City authorizing him or them so to do, and paying the fee and giving the bond hereinafter provided for."

Defendant urges that § 8 thereof has an important bearing upon the issue and must be considered. That section provides:

"Place of Business and Minimum Age: Every person, firm or corporation applying for a license under this ordinance must maintain a place of business in the City of Minneapolis, and no such license shall be granted to any person less than twenty-one (21) years of age."

Section 9 provides:

"All work to be done under Supervision of Licensee: All constructing, installing, altering, repairing and servicing of steam and hot water heating systems, in the City of Minneapolis, shall be done under the immediate supervision and control of a person, firm or corporation duly licensed as provided by this ordinance."

Pertinent, too, are § 2, relating to procedural steps to be taken by an applicant for license; subsection 2.1, requiring such applicant to furnish a surety bond for $1,000 "conditioned that the licensee shall, in all material and equipment by him furnished and in all work by him done and performed in constructing, installing, altering, repairing, or servicing such steam or hot water heating systems, * * * strictly comply with the provisions of the ordinances of said city relating thereto"; and subsection 2.2, requiring the payment by the applicant of an annual license fee of $25.

■ Concededly the heating company had a permit from the city building inspector and was in all respects legally qualified to do this job; likewise, defendant's work "was being done for the said Tunstead Heating Company, and under their directions and supervision." This being so, what is left to sustain the conviction? In other words, does the ordinance prohibit a duly qualified and licensed firm or individual in Minneapolis, having duly taken over a job for performance, from hiring a specialist, such as defendant, to install and make the repairs under the directions and supervi-

sion of the licensee? The obvious purpose of the ordinance and that which must be the foundation for its very existence is to regulate heating equipment and appliances for public safety. There is no intimation that the work was not being done by efficient men and in a perfectly safe and satisfactory manner. If the theory of the prosecution is to be sustained it obviously means that no one, individual, firm, or corporation, licensed and capable though such party or person may be, can take on a job of the type here involved without also seeing to it that anyone called to assist in the work is also licensed. Is it reasonable to suppose the ordinance was intended to go so far as to preclude the heating company from getting desired and necessary assistance from an outside firm to do this work because of its admitted special capacity to do a first-class job? There is no claim that the arrangement between the heating company and defendant was a subterfuge to avoid the ordinance. As far as the record goes, the implications are quite to the contrary.

We think § 9 of the ordinance is determinative of the ultimate result as presented upon this record. Under the first section the performance of certain tasks therein enumerated is prohibited without a license. Under § 9 these may be done lawfully if done and performed "under the immediate supervision and control of a person, firm or corporation duly licensed as provided by" the ordinance. In substance and effect, then, § 1 must be construed in the light of § 9, which obviously amounts to an exception to the prohibitions of the former. By so holding we but give effect to a result that might otherwise lead to absurdity or injustice, to be avoided if possible. 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 8947, and cases under note 49.

Of course the presumption is that every law is constitutional, that the lawmaking power has kept within constitutional limits, and that the makers thereof were possessed of full information concerning the matters in respect to which the legislation relates. Id. (2 ed. & Supps.) § 8929, and cases cited under notes. But we have refrained from passing upon this question because the constitutionality of a statute or ordinance will be determined

only when such determination is absolutely necessary in order to determine the merits of the case. Baugh v. County of Norman, 140 Minn. 465, 467, 168 N. W. 348.

Judgment reversed.

Mr. Justice Stone, absent because of illness, took no part in the consideration or decision of this case.