STATE of Minnesota,

v.

Lee Ann TURNER, Appellant.

No. C1–85–1239.

Court of Appeals of Minnesota.

Feb. 18, 1986.

Review Denied April 18, 1986.

Robert C. Alfton, Minneapolis City Atty., Roger Battreall, Asst. City Atty., Minneapolis, for State of Minnesota.

Dianna R. Stallone, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and RANDALL and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

Appellant, Lee Ann Turner, was arrested September 8, 1983, for sunbathing topless in a city park in violation of Minneapolis Park Board ordinance PB2–21 (1982) (hereinafter referred to as PB2–21) which requires that suitable attire be worn in Minneapolis parks and on its parkways. Prior to trial, on May 21, 1984, appellant and the prosecutor agreed to certify three constitutional issues to the court of appeals. This court declined decision of the certified issues and remanded the matter for trial.

On remand, appellant waived jury trial. Prior to trial the parties stipulated that the governmental objectives of PB2–21 are to control public nudity and protect societal norms. Following a trial to the judge, appellant was found guilty and sentenced. She timely appeals from the judgment of conviction entered June 25, 1985. Respondent did not file a brief and this appeal is

proceeding pursuant to Minn.R.Civ.App.P. 142.03. We affirm.

## FACTS

Appellant was arrested September 8, 1983, for sunbathing topless at Wirth Lake in Minneapolis in violation of PB2–21, which states:

> *Proper Attire Required.* No person ten (10) years of age or older shall intentionally expose his or her own genitals, pubic area, buttocks or female breast below the top of the areola, with less than a fully opaque covering in or upon any park or parkway, as defined in PB1–1. This provision does not apply to theatrical, musical, or other artistic performances upon any park or parkway where no alcoholic beverages are sold.

The parties stipulated to the facts as follows:

1. The Minneapolis Park and Recreation Board, in the interest of controlling public nudity and the protection of societal norms, has duly enacted an ordinance, PB 2–21, which prohibits, *inter alia*, exposure of the "female breast below the top of the areola" by any person over the age of ten (10) years in or on any park or parkway under its jurisdiction and control.

2. The above defendant, on or about September 8, 1983, was present in the vicinity of Wirth Lake in the City of Minneapolis, State of Minnesota, which land is under the jurisdiction and control of the Minneapolis Park and Recreation Board.

3. The defendant, a female over the age of ten (10) years, did on that occasion appear without an opaque covering over her breasts below the top of the areola.

4. In so doing, the defendant violated provisions of PB 2–21.

Prior to this arrest, appellant had been arrested on different occasions for violating other similar ordinances. Twice she succeeded in overturning those ordinances on constitutional grounds, once in Minneapolis.

## ISSUES

1. Is PB2–21 an unconstitutional restraint on appellant's freedom of expression?

2. Is PB2–21 overbroad because it proscribes full and partial nudity when unaccompanied by lewd and indecent intent?

3. Does PB2–21 violate the equal protection clauses of the United States and Minnesota constitutions?

## ANALYSIS

### I.

*First Amendment Free Expression Claim*

■ In reviewing the language of PB2–21 we note that Minnesota rules of statutory construction are applicable to our interpretation. Minneapolis, Minn., Code of Ordinances § 3.40 (1976). Under the rules of statutory construction, this ordinance is presumed constitutional. *See* Minn.Stat. § 645.17(3) (1984).

Appellant cites no authority for her claim that partial nudity, when not in connection with an artistic performance or expression, is protected by the first amendment. Nor does she disclose any states recognizing a constitutional right to sunbathe nude. Conduct or expression, in general, is not afforded unlimited constitutional protection. Not all conduct is, in itself, first amendment expression. *See Chapin v. Town of Southampton*, 457 F.Supp. 1170, 1173 (E.D.N.Y.1978). Protection depends on the presence of a "communicative element." *California v. LaRue*, 409 U.S. 109, 117–18, 93 S.Ct. 390, 396–97, 34 L.Ed.2d 342 (1972). Nudity with lewd, indecent intent is not constitutionally protected.

The Minnesota Supreme Court has held that "nudity is not protected expression, but conduct, which the city has a substantial interest in regulating via its police power." *Koppinger v. City of Fairmont*, 311 Minn. 186, 190, 248 N.W.2d 708, 711 (1976) (citation omitted). Thus, appellant's nudity does not rise to the level of constitutionally

protected expression. The city's interest in regulation must be balanced against appellant's right to free expression. *Id.* at 190, 248 N.W.2d at 711. The park board enacted PB2–21 to further what the park board perceived to be a legitimate governmental interest, protecting societal norms. The ordinance was carefully drawn to exclude nudity in artistic expression, thereby avoiding regulation of protected expression.

Appellant's claim is similar to that made in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). O'Brien claimed burning his draft card, although normally a violation of federal law, became a protected act and shielded him from prosecution because he did it to symbolize his protest against the Vietnam War and the draft. He argued that burning his draft card was symbolic speech and thus protected by the first amendment. Like O'Brien, appellant claims that, although she admits her conduct contained all the essential elements of the act proscribed by the ordinance, she is immune from prosecution because her conduct was for the purpose of communicating political beliefs.

The O'Brien Court noted:

[W]hen "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.

*Id.* at 376, 88 S.Ct. at 1678.

Government may regulate conduct

if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id.* at 377, 88 S.Ct. at 1679.

The assertion that *all* speech and *all* acts of "symbolic speech" come within the first amendment's barrier to prosecution is legally unsupportable. State and federal civil and criminal law regulating and penalizing such acts as libel, slander, inciting to riot, disorderly conduct, or public nuisance have been consistently upheld where the underlying law was carefully drawn to both limit the undesired specific conduct pursuant to a proper governmental objective and protect the public's general right to free expression.

The park board enacting PB2–21 met each of the *O'Brien* requirements. We hold that PB2–21 does not unconstitutionally infringe on appellant's right to free speech granted by the United States or Minnesota constitutions. Appellant may not knowingly violate a criminal law and escape criminal sanctions for the violation merely because she characterizes her action as "political free speech." Appellant has available legal means to protest.

Appellant, both before and after this appeal, is entitled to write or speak out for change. Appellant can communicate with Congress, the state legislature, or the Minneapolis Park Board and advocate repeal or modification of any law or ordinance. However, while this ordinance is on the books, its violation cannot be negated by a claim that violating a law to protest it clothes the violator with constitutional immunity. *Cf, United States v. Ness*, 652 F.2d 890, 892 (9th Cir.) *cert. denied* 454 U.S. 1126, 102 S.Ct. 976, 71 L.Ed.2d 113 (1981) (tax violations are *not* a protected form of dissent).

## II.

### *Overbreadth Claim*

■ Appellant claims PB2–21 is overbroad because it prohibits all nudity, not just nudity with lewd, indecent intent.[1] An

---

1. We note at the outset that this is incorrect. PB2–21 specifically allows nudity in artistic performances. Nudity in artistic expression is protected by the first and fourteenth amendments.

*Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975), *California v. LaRue*, 409 U.S. 109, 119, 93 S.Ct. 390,

ordinance is overbroad if it is "so drawn as to sweep within its ambit protected speech or expression." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 933, 95 S.Ct. 2561, 2568–69, 45 L.Ed.2d 648 (1975). Appellant claims PB2–21 is overbroad both on its face and as applied to her.

We do not agree. PB2–21 specifically states what parts of the body must be covered, the kind of covering necessary, and the age group affected. It does not purport to regulate speech. It contains an exception for nudity in artistic performance.

Courts have consistently held that non-artistic nudity, such as nude sunbathing, is not, in itself, first amendment expression. *South Florida Free Beaches v. City of Miami*, 548 F.Supp. 53, 56 (S.D. Fla.1982) *aff'd. in part and vacated in part on other grounds*, 534 F.2d 608 (11th Cir. 1984); *Chapin v. Town of Southhampton*, 457 F.Supp. 1170 (E.D.N.Y.1978); *see also Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). For nudity to be protected by the constitution, it must come within the narrow confines of legitimate artistic expression or performance. PB2–21 is so drawn. There is no requirement that nudity in contexts other than artistic expression must be accompanied by lewd, indecent interest for nudity to be regulated by the government. We hold that PB2–21 does not overbroadly regulate areas of constitutionally protected conduct.

Appellant's topless sunbathing is not protected symbolic speech and we hold that PB2–21 is not overbroad in its application to her.

### III.

*Equal Protection*

■ To withstand constitutional challenge, gender-based classifications "must serve important governmental objectives and must be substantially related to achievement of those objectives." *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 457,

397, 34 L.Ed.2d 342 (1972) *reh. denied*, 410 U.S.

50 L.Ed.2d 397 (1976); *City of Minneapolis v. Buschette*, 307 Minn. 60, 240 N.W.2d 500 (1976).

Appellant claims there is no difference between the male breast and the female breast. She argues that the ordinance creates an unconstitutional gender-based classification.

The trial judge's order quotes with approval *City of Seattle v. Buchanan*, 90 Wash.2d 584, 590, 584 P.2d 918, 920 (Wash. 1978):

[T]he female breasts * * * unlike male breasts, constitute an errogenous zone and are commonly associated with sexual arousal. * * * [C]ommon knowledge tells us * * * that there is a real difference between the sexes with respect to breasts, which is reasonably related to the preservation of public decorum and morals.

The trial court found that PB2–21 advances a legitimate governmental interest in the preservation of public decency and order. We concur. Under these circumstances we conclude, as have other courts:

There being such a difference between the breasts of males and females (however undiscernible to the naked eye of some), and that difference having a reasonable relationship to the legitimate legislative purpose which it serves, the ordinance does not deny equality of rights or impose unequal responsibilities on women.

*Buchanan* at 584, 584 P.2d at 921; *see also Eckl v. Davis*, 51 Cal.App.3d 831, 847, 124 Cal.Rptr. 685, 696 (Cal.App.1975); *Tolbert v. City of Memphis Tenn.*, 568 F.Supp. 1285, 1290 (W.D.Tenn.1983). Protection of society's norms is a legitimate legislative goal. The slight difference in clothing requirements imposed on the two sexes is necessary if the legislative purpose is to be served.

We adopt the trial court's thoughtful and well researched memorandum of law in which it states that the Minneapolis Park Board:

948, 93 S.Ct. 1351, 35 L.Ed.2d 615 (1972).

may not "make overbroad generalizations based on sex which are entirely unrelated to any differences between men and women or which demean the ability or social status of the affected class." But because the Equal Protection Clause does not "demand that a statute necessarily apply equally to all persons" or require "things which are different in fact * * * to be treated in law as though they were the same," [the Supreme Court] has consistently upheld statutes where the gender classification is not invidious, but rather realistically reflects the fact that the sexes are not similarly situated in certain circumstances. *Michael M., supra*, 450 U.S. at 469, 101 S.Ct. at 1204 (plurality opinion of Rehnquist, J.) (citations omitted).

In his concurring opinion, Justice Stewart stated:

> [In] [certain narrow] circumstances, a gender classification based on clear differences between the sexes in [sic] not invidious, and a legislative classification realistically based upon those differences is not unconstitutional. * * When men and women are not in fact similarly situated in the area covered by the legislation in question, the Equal Protection Clause does not mean that the physiological differences between men and women must be disregarded. While those differences must never be permitted to become a pretext for invidious discrimination, no such discrimination is presented by this case. The Constitution surely does not require a State to pretend that demonstrable differences between men and women do not really exist. 450 U.S. at 478 and 481, 101 S.Ct. at 1209 and 1210-1 (Stewart, J., concurring).

The Court finds that PB 2-21 is a legislative classification based upon clear differences between the sexes. The classification is constitutional because men and women are not similarly situated in the area covered by PB 2-21. PB 2-21 is not a pretext for invidious discrimination.

PB 2-21 serves two important governmental objectives, controlling public nudity and preserving societal norms. The gender classification is substantially related to achieving those objectives. Therefore, PB 2-21 is constitutional and does not violate the Equal Protection Clause.

We accept as controlling the legal decisions advanced by the trial court and the court's conclusion that PB2-21 as drawn advances legitimate governmental objectives and is not a pretext for impermissible discrimination.

## DECISION

We affirm the trial court's judgment of conviction for the violation of ordinance PB2-21. PB2-21 is not constitutionally overbroad. PB2-21, as drafted, does not infringe on appellant's freedom of expression and complies with the balance test between legitimate governmental interest and free speech. PB2-21 does not deny equal protection and is not a pretext for impermissible discretion.

Affirmed.